IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BROADCAST MUSIC, INC., et al. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:10-CV-2524-BH |
| | § | |
| TEX BORDER MANAGEMENT, | § | |
| INC., d/b/a FAR WEST, et al., | § | |
| | § | |
| Defendant. | § | Consent Case |

## MEMORANDUM OPINION AND ORDER

Pursuant to the *Order Transferring Case to Magistrate*, filed February 28, 2012, and the consent of the parties, this matter was transferred for the conduct of all further proceedings and entry of judgment in accordance with 28 U.S.C. § 636(c).

### I. BACKGROUND

On December 10, 2010, Broadcast Music, Inc. (BMI), Peer International Corporation, CD Elvis Publishing, Luar Music Corp., Songs of Univision, Inc., Fonomusic, Inc., Universal-Songs of Polygram International Inc., Emotional Wrench, Door Number One Music and Ser-Ca Publishing, Inc. (together Plaintiffs) filed this suit against Tex Border Management, Inc. d/b/a Far West (Tex Border Management) and Alfredo Hinojosa (Hinojosa) (together Defendants), alleging violations of the Copyright Act. (*See* doc. 1 at 1)[1]; 17 U.S.C. § 101 et seq. Plaintiffs allege that Defendants owned and operated a nightclub that offered public performances of Plaintiffs' copyrighted music without a license agreement despite being repeatedly notified that they needed permission for any public performances of copyrighted music.

---

[1] Citations refer to the cm/ecf system page number at the top of each page rather than the page numbers at the bottom of each filing.

The Court conducted a bench trial on June 3, 2013. After consideration of the testimony and evidence presented during the trial, the parties' post-trial proposed findings of fact and conclusions of law,[2] the arguments of counsel, and the relevant authorities, the Court finds and concludes as follows:

## II. FINDINGS OF FACT[3]

1. BMI operates as a non-profit performing rights organization that licenses the public performance of musical works, including copyrighted musical works of performers and songwriters. (Tr. 12:12-24.)

2. Tex Border Management owned and operated a nightclub known as Far West located at 7331 Graston Avenue, Dallas, Texas 75214.[4] (Tr. 148:17-24.)

3. Far West played live music and/or recorded music by karaoke and/or disc jockey in February 2008, February 2010, and June 2010. (Ex. 19-24; Tr. 6:10; 14:13-15:8; 26:19-27:16; 27:23-28:3-9; 120:11-12; 125:9-10; 129:11-13; 130:13-19; 93:22-94:1; 111:9-14; 113:5-9; 113:10-13; 119:18-22; 130:2-8; 133:11-17; 138:15-17: 139:5-9: 157:3-7).

4. The music performed at Far West was public performance. (Tr. 148:2-4.)

5. Hinojosa was the president of Tex Border Management, Inc., in the Texas Franchise Tax Public Information Reports filed with the Texas Secretary of State in the years 2005 through

---

[2] Plaintiffs rely heavily on the "stipulated facts" from the First Amended Final Pretrial Order for their proposed findings of fact. (*See* docs. 74 at 2-10; 79 at 1-9.) Only Plaintiffs stipulated to the facts listed in their portion of the order, however. (*See* doc. 74 at 2-10.) Defendants did not expressly stipulate to those facts in the order. (*See id.* at 10.)

[3] "Ex." designates the corresponding joint trial exhibits and page number. "Tr." designates the transcript of the bench trial before the Court, which was filed on June 16, 2013. (Doc. 77.)

[4] Tex Border Management d/b/a Far West closed in December 2012 and is no longer in existence. (Doc. 77 at 144, 171.)

2

2011. (Ex. 6-12; Tr. 35:3-6).

6. BMI made demands by letter and telephone on Tex Border Management and Hinojosa that they obtain a license to play its music for a period of years 1998 through 2010. (Ex. 15; Tr. 14:11-16:7).

7. Between November 1998 and June 2010, BMI offered to grant a license for public performances of its musical compositions at Far West. (Exs. 15, 16; Tr. 14:11-16:7).

8. On February 9, 2008, February 12, 2010, and June 18, 2010, Defendants were not licensed to publicly perform any of their musical compositions at Far West. (Tr. 23:22-25;146:9-15).

9. On February 9, 2008, February 12, 2010, and June 18, 2010, BMI's investigator visited Far West and made audio recordings and written reports of the music performed there. (Ex. 22-24; Tr. 27:2-28:7; 125:1-12; 127:1-8).

10. The audio recordings were analyzed, and BMI identified nine compositions that were in its repertoire. (Tr. 25:20-26:12; 29:1-10; 32:13-17.)

11. The nine compositions are: (1) Estando yo Contigo; (2) Pintame; (3) Amiga Soledad; (4) Un Minuto Mas; (5) Dale don Dale; (6) Cuando Volveras; (7) Almohada Mojada; (8) En El Mismo Terreno; and (9) Woodfloors a/k/a Wood Floors. (Tr. 6:11-14.)

12. Plaintiffs owned or licensed, and properly registered, the copyright of all nine compositions. (Tr. 30:21-32:20).

13. Plaintiffs lost license fees of $127,000.00 from October 1, 1999 to September 30, 2010, due to Tex Border Management's refusal to enter into a licensing agreement with them. (Tr. 19:23-20:14).

3

## IV. CONCLUSIONS OF LAW

**A.**    **Copyright Infringement**

Plaintiffs argue that Defendants infringed their copyright by publically playing nine of their musical compositions at Far West without permission. (Doc. 79 at 5-7.)

The Copyright Act grants a copyright owner the exclusive rights to perform or to authorize the performance of the copyrighted work publicly. 17 U.S.C. § 106(4). One who violates any of the rights of the copyright owner is an infringer. 17 U.S.C. § 501(a). To succeed on an infringement claim, a plaintiff must prove the following elements:

1)    the originality and authorship of the compositions involved;

2)    compliance with all formalities required to secure a copyright under Title 17 of the United States Code;

3)    that the plaintiffs are the proprietors of the copyrights of the composition[s] involved in the action;

4)    that the compositions were performed publicly; and

5)    that the defendants had not received permission from any of the plaintiffs or their representatives for such performance.

*EMI April Music Inc. v. Jet Rumeurs, Inc.*, 632 F. Supp.2d 619, 622 (N.D. Tex. 2008) (citations omitted). Copyright registration certificates serve as prima facie evidence of the first three elements of an infringement claim. 17 U.S.C. § 410(c); *Jet Rumeurs, Inc.*, 632 F. Supp.2d at 622; *Collins Court Music, Inc. v. Pulley*, 704 F. Supp. 963, 964 (W. D. Mo. 1988) (collecting cases); *Virgin Music, Inc. v. Nathaniel's, Inc.*, No. 83-1356, 1984 WL 22064, *1 (W.D. Pa. Mar. 7, 1984).

The evidence established that Plaintiffs owned the nine copyright-registered musical compositions in question, meeting the first three elements of the infringement claim. (Findings of

4

Fact (FOF), *infra,* #11); *see* 17 U.S.C. § 410(c). Far West performed the nine musical compositions publically without permission. (FOF ## 4, 8-11.) Defendants essentially conceded that Tex Border Management infringed on Plaintiffs' nine copyrighted musical compositions.[5] (Doc. 80 at 4.) Plaintiffs have met their burden to establish by a preponderance of the evidence Tex Border Management infringed on their copyrights.

**B.    Joint and Several Liability**

Plaintiffs seek to hold Hinojosa jointly and severally liable with Tex Border Management for the infringements based on his position as its president. (Doc. 79 at 8-10.)

"[A]ll participants in copyright infringement are jointly and severally liable as tortfeasors." *Fermata Int'l Melodies, Inc. v. Champions Golf Club, Inc.*, 712 F. Supp. 1257, 1262 (S.D. Tex. 1989) (citing *Screen Gems-Columbia Music, Inc. v. Metlis & Lebow Corp.*, 453 F.2d 552, 554 (2d Cir.1972) *aff'd*, 915 F.2d 1567 (5th Cir. 1990); *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir.1971)). "Courts have traditionally held the corporate officer will be liable as a joint tortfeasor with the corporation in a copyright infringement case where the officer was the dominant influence in the corporation, and determined the policies which resulted in the infringement." *Crabshaw Music v. K-Bob's of El Paso, Inc.*, 744 F.Supp. 763, 767 (W.D. Tex. 1990) (internal quotation marks omitted). An officer of a corporation may be held vicariously liable if the individual had the following: (1) "the right and ability to control the infringing activity"; and (2) "a direct financial interest in that activity." *Jet Rumeurs, Inc.*, 632 F.Supp.2d at 623; *see also*

---

[5] In addition to conceding Tex Border Management's infringement, Defendants failed to provide any evidence or argument in support of the affirmative defenses they listed in the pretrial order. (*See* docs. 74 at 10; 79 at 2-5.) Even assuming that the affirmative defenses were properly raised and asserted, Defendants did not meet their burden to establish the defenses by a preponderance of the evidence.

*Meadowgreen Music Co. v. Voice in the Wilderness Broad., Inc.*, 79 F. Supp. 823, 826 (E.D. Tex. 1992).

1.  *Right and Ability to Control*

Plaintiffs argue that Hinojosa had "the right and ability to control the infringing activity." (Doc. 79 at 9.)

Courts have found that an individual defendant had the requisite right and ability to control infringing activities when the individual defendant actually had the control over the day-to-day activities, or had sufficient equity interest in the infringing entity to infer the existence of such control. *See Broad. Music, Inc. v. Hobi, Inc.*, 20 F.3d 1171, at *2 (5th Cir. Apr. 9, 1994) (unpublished) (finding that the individual defendant as the sole shareholder and president had the "ultimate authority to police the conduct of his managers and disc jockeys"); *Crabshaw Music*, 744 F. Supp. at 767 (finding that although the individual defendant hired managers to manage his restaurants, he retained the right and ability to supervise the restaurants, even if he had not asserted it); *Fermata*, 712 F. Supp. at 1262 (finding that the individual defendant was in charge of the day-to-day operations, including hiring and firing of staff); *Metered Music, Inc. v. Powell Meredith Commc'ns Co.*, No. Civ.A.1:04-CV-015-C, 2005 WL 525224 (N.D. Tex. Mar. 2, 2005) (finding that as sole shareholders, the individual defendants supervised and controlled the company policies, employees, and activities); *Red Giant, Inc. v. Molzan, Inc.*, No. H-07-2657, 2009 WL 2242349, at *6 (S.D. Tex. July 24, 2009) (finding that the individual defendant "owned the entire interest" in the infringing company); *Swallow Turn Music v. Wilson*, 831 F. Supp. 575, 579 (E.D. Tex. 1993) (finding that the individual defendant was the sole proprietor and thus had the right and ability to supervise the infringing activity). Here, there was no evidence that Hinojosa had any equity interest

in Tex Border Management, and he denied having any control over the day-to-day activities of Far West. (Tr.155:24-156:16; 163:18-24; 165:23-166:4.)

To show that Hinojosa had the right and ability to control the infringing activity, Plaintiffs assert that "Hinojosa's role at Far West . . . included hiring, promoting, marketing, and representing international bands[.]" The trial testimony to which Plaintiffs cite in support of this assertion shows that Hinojosa was the president of four different companies owning nightclubs, the president of a record company, the president of a theater company, and that he "bring[s] up a lot of musical acts from Mexico[.]" (Tr. 141:9-144:13.) None of the testimony related directly to Far West, however.

Plaintiffs also rely on Hinojosa's role as the president, incorporator, and registered agent[6] of Tex Border Management as the evidence of "his deep involvement in the management and control of the corporation[.]" (Doc. 79 at 9.) The fact that Hinojosa held these positions does not automatically establish that he had the requisite right and ability to control the infringing activities without more. Hinojosa testified that he was a "concept" man for Tex Border Management, that he did not manage its day-to-day activities, and that he had not hired the DJ and the band who played the infringing musical acts in question. (Tr. 156:7-9, 22-23; 157:3-9; 161:3-7; 163:17-24.) He further testified that the shareholders of Tex Border Management were the ultimate decision makers, that he had no authority to make decisions on licensing, and that he had taken the letters from BMI to the shareholders. (Tr. 153:2-8; 156:10-157:1; 161: 18-23; 165:1-10.) Plaintiffs did not provide evidence that identified Hinojosa as a shareholder of Tex Border Management, showed that he managed its day-to-day activities, or otherwise showed that he had actual authority over the

---

[6]Plaintiffs' asserted that Hinojosa was the incorporator of Tex Border Management, Inc. (*See* doc. 74 at 3.) This assertion is contradicted by the actual evidence. (*See* Ex. 2.)

infringing activities. Even if Hinojosa's testimony is taken as not credible, Plaintiffs still failed to bring forward evidence showing that Hinojosa had the right and ability to control the infringing activities. They therefore failed to meet their burden to establish the first element necessary to establish Hinojosa's joint and several liability by a preponderance of the evidence.

2. *Direct Financial Interest*

Plaintiffs also argue that by virtue of Hinojosa's management contract with Tex Border Management, Hinojosa received a financial benefit directly related to the infringing activities. (Doc. 79 at 9-10.)

Courts in this Circuit have ruled in favor of finding a "direct financial interest" when the individual defendant, in addition to being an officer and receiving a salary from the infringing corporation, had some equity interest in the corporation itself. *See Fermata*, 712 F. Supp. at 1262 (finding that in addition to receiving a salary from the infringing corporation, the individual defendant was the president, a director, and the majority shareholder); *Meadowgreen Music Co.*, 789 F. Supp. at 826 (noting that in addition to receiving a salary from the infringing radio station, the individual defendant owned all of the outstanding voting shares of the infringing corporation, was the president of the infringing corporation, and was a general manager of the specific radio station where the infringing activity occurred); *Red Giant, Inc.*, 2009 WL 2242349, at *5-6 (noting that in addition to a $80,000 salary, the individual defendant owned the entire interest in the infringing corporation); *Swallow Turn Music*, 831 F. Supp. at 579 (finding that the individual defendant was the sole proprietor, and thus had a financial interest in the infringing activity). If the individual defendant has no equity interest in the infringing entity, the party seeking joint and several liability needs to show a direct link between the infringing activities and the individual defendant's financial

8

interest in other ways. *See e.g. Sony Discos, Inc. v. E.J.C. Family Partnership*, No. H-02-3729, 2010 WL 1270342, at *4 (S.D. Tex. Mar. 31, 2010) (noting that the individual defendant's income did not derive from "a percentage of sales from the infringing vendors. . . [and if] admission, food, and parking sales did increase, the number[] . . . was minor and imperceptible . . . and [the individual defendant's] benefit was indirect.").

Here, Hinojosa testified that he did not have an equity interest in Tex Border Management and was not shareholder; he only had a management contract with Tex Border Management, Inc. (Tr. 155:2-5, 155:12-156:6.) Plaintiffs provided no evidence to the contrary. Further, there was no evidence that Hinojosa even received a salary from Tex Border Management. Even if he did, no evidence was presented that his salary was a percentage of sales from the nightly performances at Far West. *See id.* Hinojosa's position as an officer and his management contract with Tex Border Management do not establish that he received a direct financial benefit from the musical performances of Plaintiffs' copyrighted works. *See e.g., Yesh Music v. Lakewood Church*, No. 4:11-CV-03095, 2012 WL 524187, at *7 (S.D. Tex. Feb. 14, 2012) (ruling that merely asserting that the individual defendants were directors of the defendant church and that they had appeared in a television advertisement marketing a infringing product are not sufficient facts for joint and several liability). Plaintiffs failed to meet the burden to show a direct financial interest by a preponderance of the evidence and therefore did not prove the second element necessary to establish Hinojosa's joint and several liability.

Because Plaintiffs failed to meet the burden to show by a preponderance of evidence that Hinojosa had a direct financial interest in the infringing activities and that he had the right and ability to control the infringing activities, they have failed to establish that he is jointly and severally liable

with Tex Border Management for the infringing activities. *See Playboy Enter., Inc. v. Webbworld, Inc.*, 991 F.Supp. 543, 562 (N.D. Tex. 1997) ("[The plaintiff] did not prove by a preponderance of the evidence that [the individual defendant] should be held liable for vicarious copyright infringement."), *aff'd*, 168 F.3d 486 (5th Cir. 1999).

## C. Damages

Plaintiffs seek an injunction, statutory damages, and attorneys' fees. (Doc. 79 at 10.)

### 1. *Injunctive Relief*

Plaintiffs seek to enjoin Tex Border Management from the unauthorized performance of BMI's copyrighted music in any establishment affiliated with it. (Doc. 79 at 10.)

Under the Copyright Act, "[a]ny court having jurisdiction of a civil action arising under this title may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). Permanent injunction relief, however, is "never lightly given." *Playboy Enters., Inc.*, 991 F. Supp. at 561. However, when a copyright infringement occurs, a copyright proprietor is entitled to an injunction prohibiting further infringing performances, *Jobete Music Co., Inc. v. Hampton*, 864 F. Supp. 7, 9 (S.D. Miss. 1994), as long as the owner satisfies the requirements.

To establish entitlement to permanent injunctive relief in copyright infringement cases, the party seeking the injunction must demonstrate the following: "(1) actual success on the merits; (2) no adequate remedy at law; (3) that the threatened injury outweighs any damage to the defendant; and (4) the injunction will not disserve the public interest." *Arista Records, Inc. v. Kabani*, No. 3:03-CV-1191-H, 2004 WL 884445, at *4 (N.D. Tex. Apr. 23, 2004) (citing *DSC Comm'ns Corp. v. DGI Tech., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996)). In short, an injunction is appropriate if liability

has been established *and* if there is a continuing threat of further infringement of Plaintiffs' copyrights. *See Fermata*, 712 F.Supp. at 1262; *see also Granville v. Suckafree Records, Inc.*, CIV.A.H-03-3002, 2006 WL 2520909 at *6-7 (S.D. Tex. June 28, 2006); *Cent. Point Software, Inc. v. Nugent*, 903 F.Supp. 1057, 1060 (E.D. Tex. 1995) ("Courts have traditionally granted permanent injunctions where a continuing threat of copyright infringement exists and liability has been established"). "The purpose of an injunction is to prevent future violations[.]" *Morrow v. Washington*, 277 F.R.D. 172, 200 (E.D. Tex. 2011).

Here, Plaintiffs have prevailed on their copyright infringement claim against Tex Border Management, thus establishing the first element. *See Pham v. Jones*, CIV.A.H-05-2027, 2006 WL 1342826, at *5 (S.D. Tex. May 13, 2006) ("As previously discussed, [the plaintiff] succeed on the merits of his claim and thus sufficiently established the first element required for a permanent injunction."). They failed, however, to show that there is a continuing threat of future infringement. *See Fermata*, 712 F.Supp. at 1262 ("Courts have traditionally granted permanent injunctions, if liability is established and a continuing threat to the copyright exists."). Plaintiffs cite to Tex Border Management's willful disregard of Plaintiffs' warning letters in the past.[7] (doc. 79 at 10-11.) Hinojosa testified at the trial that Tex Border Management was no longer in existence, however, and there was no evidence to the contrary. (Tr. 171:3-6.) Its past willful infringements therefore does not establish a continuing threat of future infringement. (Tr. 144:15-22; 171:3-6.) Plaintiffs failed to put forth evidence that there was a likelihood that Tex Border Management would infringe on Plaintiffs' copyright in the future. (*See* doc. 79 at 10-11); *Morrow*, 277 F.R.D. at 200. Plaintiffs'

---

[7]Plaintiffs also cite to Hinojosa's 2005 agreement. (Doc. 79 at 10.) As Hinojosa is not jointly and severally liable to the copyright infringements, the 2005 agreement is not relevant to the permanent injunction analysis.

request for a permanent injunction is denied.

### 2. *Statutory Damages*

Here, Plaintiffs seek statutory damages of $20,000 for each musical compositions infringed. (Doc. 79 at 13; Tr. 36:4-8.) Plaintiffs' suit involves nine independent copyrighted musical compositions, thus bringing the total statutory damages to $180,000. (Doc. 79 at 12.) This is less than twice the unpaid licensing fees Plaintiffs would have received from Tex Border Management. (*See id.*; FOF #13.)

Once copyright infringement has been found, "the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work . . . in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). If a court finds that "the infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200," but if the court finds "that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2).

Under § 504(c), courts must award damages according to the number of separate and independent works infringed. *Broad. Music, Inc. v. Xanthas, Inc.*, 855 F.2d 233, 237 (5th Cir. 1988); *see also Walt Disney Co. v. Powell*, 897 F.2d 565, 569 (D.C. Cir. 1990) ("Both the text of the Copyright Act and its legislative history make clear that statutory damages are to be calculated according to the number of works infringed, not the number of infringements."). The amount awarded must also be within the statutory limits. *Golden Torch Music Corp. v. Lichelle's Inc.*,

12

Civ.A. No. W-86-CA-005, 1987 WL 14543, at *4 (W.D. Tex. Jan. 26, 1987). "A court may consider both restitution and deterrence when formulating the 'just' amount of damages." *WB Music Corp. v. Big Daddy's Entm't, Inc.*, EP-05-CA-267-PRM, 2005 WL 2662553, at *4 (W.D. Tex. Oc. 19, 2005). The damages to be assessed, however, are within the broad discretion of the trial court. *Golden Torch Music Corp.*, 1987 WL 14543, at *4.

The evidence shows that Plaintiffs first contacted Tex Border Management (i.e. Far West) through Hinojosa in 1998, offering licensing agreements, and Plaintiffs continued mailing letters to Defendants until the last correspondence on June 30, 2010. (Tr. 15 at 21-16:7.) At least one of the letters notified Defendants that Plaintiffs had confirmed that copyright infringement had occurred at Far West, and they attempted to resolve the licensing issue. (Tr. 19:1-14.) Plaintiffs also spoke to various people at Tex Border Management, including Hinojosa, urging Tex Border Management to enter into a licensing agreement with BMI. (Tr. 16:15-17:20.) It never responded. (Tr. 16:8-14; 23:22-25; 164:25-165:12.) The continual attempts by Plaintiffs to obtain a licensing agreement with Tex Border Management over a span of a decade, and Tex Border Management's corresponding silence, show Tex Border Management's willful disregard of BMI's legal rights. *WB Music Corp.*, 2005 WL 2662553, at *4 ("A court may infer willfulness from evidence that notice of a valid copyright was provided to the defendant prior to the infringement.").

For the nine infringements by Tex Border Management, the Court awards $20,000 per musical composition infringed as requested by Plaintiffs, making the total statutory damages as $180,000. This amount is appropriate given the willful infringements by Tex Border Management. *See id.* ("[W]hen calculating statutory damages against establishments that publicly perform musical compositions without first obtaining a license, courts frequently reach an award that is three to five

13

times the licensing fee owed by the defendant. . . . The intent behind such awards is to show defendants that it is more costly to infringe than to obey copyright laws." (citations omitted)).

### 3. *Attorneys' Fees and Costs*

Plaintiffs seek $8,210 in costs and $117,003 in attorneys' fees for a total of $125,213. (Doc. 79-1 at 3.)

Section 505 of the Copyright Act provides that "the court in its discretion may allow the recovery of full costs by or against any party . . . the court may also award a reasonable attorney's fees to the prevailing party as part of the costs." 17 U.S.C. § 505; *see John Perez Graphics & Design, LLC v. Green Tree Inv. Group, Inc.*, No. 3:12-cv-4194-M, 2013 WL 1828671, at *5 (N.D. Tex. May 1, 2013). Although left to the trial court's discretion, an award of attorneys' fees in copyright infringement cases is "the rule rather than exception and should be awarded routinely." *Micromanipulator, Co. v. Bough*, 779 F.2d 255, 259 (5th Cir. 1985). There is "no precise formula" to decide whether to grant attorneys' fees under § 505, but some non-exclusive factors are: "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance consideration of compensation and deterrence." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994). Finding of willful infringement also may guide the court's decision. *EMI April Music, Inc. v. Know Group, LLC*, No. 3:05-CV-1870-M, 2006 WL 3203276, at *5 (N.D. Tex. Nov. 6, 2006) (Lynn, J.).

After a decade-long attempt to come to an agreement, Plaintiffs are entitled to the reasonable fees and costs incurred to defend their legal rights against Tex Border Management's willful infringements. Owners of copyrights should be able to protect their work. Plaintiffs provided an affidavit by its counsel detailing where the costs were incurred as well as the time and rates of the

attorneys, and copies of attorneys' billing records for legal services. (Docs. 79-1; 79-2; 79-3.) The Court finds that the affidavit and the invoices show that the costs and fees incurred are reasonable under the circumstances of the case and awards Plaintiffs the full amount requested. *See Jet Rumeurs, Inc.*, 632 F.Supp.2d at 626; *Jobete Music Co., Inc.*, 864 F.Supp.at 10.

## V. CONCLUSION

For the reasons stated above, the Court finds that Tex Border Management has willfully infringed on Plaintiffs' nine copyrighted musical compositions, and that it is liable to Plaintiffs for statutory damages in the amount of $180,000, and attorneys' fees and costs in the amount of $125,213, against Tex Border Management.

**SO ORDERED on this the 31st day of March, 2014.**

IRMA CARRILLO RAMÍREZ
UNITED STATES MAGISTRATE JUDGE